AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
District of New Jersey

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Keith Fisher | ) | Case No. |
| | ) | 15-2037 (JS) |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___from 2/1/10 through 8/4/15___ in the county of ___Camden, Burlington & others___ in the
___ District of ___New Jersey___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 1349 | See Attachment A |

This criminal complaint is based on these facts:

See Attachment B

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Brian Leddy, DOI-OIG
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___08/05/2015___

_____
*Judge's signature*

City and state: ___Camden, New Jersey___

U.S. Magistrate Judge Joel Schneider
*Printed name and title*

CONTENTS APPROVED
UNITED STATES ATTORNEY

By: _____
MATTHEW T. SMITH, AUSA

Date:  August 5, 2015

**ATTACHMENT A**

From in or about February 2010 through on or about August 4, 2015, in Camden County, Burlington County, and others, in the District of New Jersey, and elsewhere, the defendant,

Keith Fisher,

did knowingly and intentionally conspire and agree with others to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice is in substance set forth herein, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communications in interstate commerce certain writings, signs, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

1

**ATTACHMENT B**

**AFFIDAVIT**

I Brian T. Leddy, being duly sworn, depose and say:

## I.  BACKGROUND

1.     I am a Special Agent of the U.S. Department of the Interior (hereinafter, "DOI"), Office of Inspector General (hereinafter, "OIG"), and have been so employed for approximately three and a half years. My experience as an agent with DOI-OIG has included numerous cases involving federal contracts. I have received training and have gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches, and various other criminal laws and procedures.  I have personally participated in the execution of search warrants.

2.     The information contained in this Affidavit is based upon: (a) my personal knowledge and observation; (b) my training and experience; (c) conversations I have had with other law enforcement officers and witnesses; and (d) the review of documents and records.  I submit this Affidavit in support of a Criminal Complaint and arrest warrant for **Keith Fisher** for conspiracy to commit wire fraud.

3.     Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of a Criminal Complaint and arrest warrant, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for the issuance of the Criminal Complaint and arrest warrant for conspiracy to commit wire fraud.

4.     Based upon the facts set forth herein, I respectfully submit that there is probable cause to believe the subject violated federal law, specifically conspiracy to commit wire fraud contrary to Title 18 United States Code, section 1343 and in violation of Title 18 United States Code Section 1349.

5.     I have personally been involved in an investigation involving Keith Fisher and the following entities: KLA International, Inc., Quad Trade Services, Inc, TCI Technologies, Inc., Atlantic Safety Corporation, Security Tactical Corporation, West Coast Tactical, and Pacific Safety Solutions (collectively, the "Fisher Entities").  Fisher and the Fisher Entities are described in greater detail in Section II of this Affidavit.  Where the contents of statements and conversations of others are reported herein, they are reported in substance and in part, except

1

where otherwise indicated.  Where I assert that an event occurred on a particular date, I am asserting the event occurred on or about the date alleged.

## II.  INTRODUCTION TO THE INVESTIGATION

7.  <u>FedBid, Inc.</u>  Based on my investigation in this matter, I have learned that FedBid, Inc. ("FedBid") is a privately-held company based in Vienna, Virginia that operates a fully-managed online marketplace that allows government, businesses, and educational institutions to purchase products.  To accomplish this, FedBid operates FedBid.com, an internet website and portal contracted by various federal agencies and provides reverse auction services through this web portal.

8.  <u>Earth Class Mail.</u>  Based on my investigation in this matter, I have learned that Earth Class Mail is a privately-held company based in Beaverton, Oregon that provides services including virtual addresses, mail scanning, mail forwarding, registered agent, automatic check deposit, collaborative mailroom, secure storage, and secure shredding.

9.  <u>American Heritage Federal Credit Union.</u>  American Heritage Federal Credit Union is a $1.5 billion member-owned financial cooperative serving over 700 sponsor companies. It has over 136,000 members and 30 branches in Philadelphia, Bucks, Montgomery, and Camden Counties.

10.  <u>Freedom Credit Union.</u>  Freedom credit union is a cooperative financial institution, and a non-profit organization in the Philadelphia area. It primarily serves members who live, work, worship, perform volunteer service, or attend school in Bucks, Chester, Delaware, Montgomery, or Philadelphia Counties.

11.  <u>KLA International, Inc.</u> Based on my investigation in this matter, I have learned the following about KLA International, Inc. (hereinafter, "KLA"):

a.  KLA had several e-mail addresses associated with it, including klainternational@yahoo.com, startrek33@rocketmail.com, johnmatthews192@yahoo.com, and wjames_ds@yahoo.com.

b.  KLA's web site, www.KLA-INTERNATIONAL.NET, stated that KLA was in the business of offering a variety of products and services for business, residential and government customers.  The web site further stated that KLA offered a variety of products and services including import/export services, shipping and receiving services, computer hardware and software products, notebooks, desktops and gaming systems, computer repair and installation

services, solar energy products and services, and cleaning and chemical products.

c.   KLA's business address is 926 Haddonfield Road, Suite 312, Cherry Hill, New Jersey 08002-2775.  This address is a United Parcel Service (hereinafter, "UPS") store which contains a number of mailboxes that are available for rent.

d.   KLA's LinkedIn profile, found at linkedin.com/pub/keith-fisher/13/65b/61, listed Keith Fisher as the President at KLA, International, Inc., Greater Philadelphia Area.

e.   Since June 2009, KLA has been an active seller with FedBid. Specifically, FedBid's records reflect that KLA's seller representative is Keith Fisher and the seller representative's e-mail is startrek33@rocketmail.com. FedBid's records also show that KLA listed a second e-mail address, johnmatthews192@yahoo.com.  Finally, FedBid's records also show that the FedBid password for one of the KLA representatives is "Quadtrade."

f.   KLA's records also list Keith Fisher as a point of contact for KLA.

g.   KLA has several phone numbers associated with it, including 800-762-4122.

h.   KLA has several names associated with it, including Allen Sowden, Keith Fisher, Jr., and Kareem Fisher.

i.   The KLA website (www.kla-international.net) was registered to Keith Fisher, KLA International Inc., 926 Haddonfield Road, Suite 312, Cherry Hill, NJ.  An e-mail address of startrek33@rocketmail.com and a phone number (267) 401-9705 were also linked to the website.

12.   Quad Trade Services, Inc.  Based on my investigation in this matter, I have learned the following about Quad Trade Services, Inc. (hereinafter "Quad"):

a.   Quad has the following e-mail addresses associated with it: quadtradeservices@yahoo.com, chris.scott1215@yahoo.com, and johnmatthews192@yahoo.com.

b.   Quad's business address is 141-I Route 130 South, Unit 233, Cinnaminson, New Jersey 08077-3301, which is the address of a UPS store.

3

c.     Quad's website stated that Quad's main product line is a variety of safety equipment along with electronics, solar products, and chemicals.

d.     The search of a business database (Hoovers) listed Keith Fisher as the president of Quad.

e.     The Quad website was registered to Keith Fisher.

f.     Quad's records in the System for Award Management listed Keith Fisher as a point of contact for Quad.

g.     Quad's Delaware Secretary of State Certificate of Incorporation listed Keith Fisher as the director of the company.

h.     Quad has several phone numbers associated with it, including 888-240-3598.

i.     The Quad website (www.quadtradeservices.com) was registered to Keith Fisher, 141 I Route 130 South NO 233, Cinnaminson, NJ. An e-mail address of keith.fisher33@yahoo.com and a phone number (267) 401-9705 were also linked to the website.

13.     TCI Technologies, Inc. Based on my investigation in this matter, I have learned the following about TCI Technologies, Inc. (hereinafter "TCI"):

a.     TCI had several e-mail addresses associated with it, including tcitechnologies@yahoo.com and timjohnson29@yahoo.com.

b.     TCI's business address is 1640 Nixon Drive, Unit 121, Moorestown, New Jersey 08057, which is the address of a UPS store.

c.     TCI's Delaware Secretary of State Certificate of Incorporation listed the name of the director as Keith Fisher.

d.     TCI's records in the System for Award Management listed Keith Fisher as a point of contact for TCI.

e.     TCI has several phone numbers associated with it, including 877-248-7969.

4

14.   <u>Atlantic Safety Corporation</u>.  Based on my investigation in this matter, I have learned the following about Atlantic Safety Corporation (hereinafter "Atlantic"):

a.   Atlantic has at least several e-mail addresses associated with it, including johndavisjr87@yahoo.com and fran.todd11@yahoo.com.

b.   Atlantic's business address is 427 N Tatnall Street, Ste 90768, Wilmington, DE 19801, which is the address of an Earth Class Mail location.

15.   <u>Security Tactical Corporation.</u>  Based on my investigation in this matter, I have learned the following about Security Tactical Corporation (hereinafter "Security Tactical"):

a.   Security Tactical's business address is 8605 Santa Monica Blvd, #90768, Los Angeles, CA 90069, which is the address of an Earth Class Mail location.

b.   Security Tactical has at least one phone number associated with it, (856) 236-7126.

16.   <u>West Coast Tactical.</u> Based on my investigation in this matter, I have learned the following about West Coast Tactical:

a.   West Coast Tactical has several e-mail addresses associated with it, including westcoast.tactical@yahoo.com.

b.   West Coast Tactical's business address is 4780 W. Ann Road, Suite 295, North Las Vegas, NV 89031-3471.

17.   <u>Pacific Safety Solutions.</u>  Based on my investigation in this matter, I have learned the following about Pacific Safety Solutions (hereinafter "Pacific Safety"):

a.   Pacific Safety has several e-mail addresses associated with it, including pacificsafetysolutions@yahoo.com.

b.   Pacific Safety's business address is 6935 Aliante Parkway, Unit 169, North Las Vegas, NV 89084.

18.   <u>Keith Fisher</u>.  Based on my investigation in this matter, I have learned the following about Keith Fisher (hereinafter "Fisher"):

 a. Fisher is the President of KLA and the Director for Quad and TCI.

 b. Fisher is a point of contact for KLA, Quad, and TCI.

 c. Keith Fisher has an Earth Class Mail account for receiving mail at 427 N Tatnall Street, Ste 90768, Wilmington, DE 19801, which is the business address of Atlantic.

 d. Fisher has an Earth Class Mail account for receiving mail at 8605 Santa Monica Blvd, #90768, Los Angeles, CA 90069, which is the business address for Security Tactical Corporation.

 e. Fisher submitted an application with the U.S. Postal Service ("USPS") to use 4780 W. Ann Rd., Suite 5 #295, North Las Vegas, NV 89031, for mail delivery, which is the business address for West Coast Tactical. The name of the firm or corporation listed on the application was West Coast Tactical.

 f. Fisher submitted a USPS application to use 6935 Aliante Parkway #104 #169, North Las Vegas, NV 89084, for mail delivery, which is a UPS store and the business address for Pacific Safety Solutions. The name of the firm or corporation listed on the application was Pacific Safety Solutions.

 g. In 2003, Fisher pleaded guilty to mail fraud and bank fraud and was to be imprisoned for a total term of 96 months. Upon release from imprisonment, Fisher was placed on supervised release for a term of 5 years. Fisher was released from prison in or about March 2009 and was on supervised release until in or about March 2014.

## III. THE CURRENT INVESTIGATION

### A. Victims of Fisher's Scheme to Defraud

19. The DOI-OIG investigation revealed that, beginning as early as February 2010, KLA, Quad, and TCI received numerous contracts from the U.S. Government (hereinafter, the "Government") through FedBid to provide government agencies with goods. In general, once KLA or Quad had received a contract from the Government, KLA or Quad would in turn arrange for a victim-vendor to provide the goods to the Government. In order to induce the victim-vendors to agree to provide the goods and extend credit to KLA or Quad, a representative from KLA or Quad made false and fraudulent representations regarding their creditworthiness and history, or their association with the

Government.  After the victim-vendor provided the goods to the Government, the Government would pay KLA or Quad under the original contract.  According to the victim-vendors, however, KLA or Quad never paid the victim-vendors, despite numerous requests from the victim-vendors to do so.  As set forth below, the investigation revealed that neither Fisher or any of the Fisher Entities engages in any lawful or legitimate business.  Moreover, the investigation revealed that the names "Roger Dunbar," "Chris Scott," "William James," and "Tim Johnson" are aliases for Fisher and "John Matthews" is an alias for Fisher's son Kareem Fisher.  Finally, the investigation revealed that e-mail accounts at Yahoo! with email addresses using variations of these aliases (including johnmatthews192@yahoo.com, timjohnson29@yahoo.com, Williamjames239@yahoo.com, wjames_ds@yahoo.com, and chris.scott1215@yahoo,com) among others were used by Fisher and his co-conspirators to perpetrate the fraud, as described below.

## 1. **Victim-Vendor Southern Lock and Supply Co.**

20.    For example, in 2014, through false and fraudulent pretenses, Quad induced a company called Southern Lock and Supply Co. ("Southern Lock") to enter into an agreement with Quad and provide the Government (here, DOI) with padlocks.  After the Government had paid Quad for the padlocks, Quad promised to pay Southern Lock but never did despite numerous requests. Specifically:

        a.     In May of 2014, A.L., an employee at Southern Lock, contacted DOI-OIG to complain that Southern Lock was the victim of a fraud perpetrated by Quad.  According to A.L., in early 2014, a man representing himself as "Roger Dunbar" from Quad contacted Southern Lock requesting an order in which Southern Lock would provide 4,000 padlocks to DOI on credit.  "Roger Dunbar", referenced a DOI contract number when placing the order from Southern Lock.  Quad submitted a credit application to Southern Lock, signed by "Roger Dunbar" in which Quad requested a credit limit of $100,000.  This credit application included three of Quad's "trade references:" a company called Robar Industries, KLA, and TCI.

        b.     Prior to issuing a line of credit to Quad, Southern Lock sent out trade reference forms via fax to the three customers listed on the credit application that Quad had submitted: Robar Industries, KLA, and TCI.  Shortly thereafter, Southern Lock received a response from each company listed as a trade reference for Quad.  In short, each listed Quad as a creditworthy company and included positive comments and specific information on Quad such as average payment time, credit limit amount, and annual purchase information. Based on part of the completed trade reference forms from Robar Industries,

KLA, and TCI, A.L. signed the Quad credit application, thereby issuing Quad a line of credit with a limit of $100,000.  After Southern Lock opened a credit account, Quad placed an order with Southern Lock for the 4,000 padlocks. A.L. ultimately accepted Quad's $40,000 order and arranged for the padlocks to be shipped.

       c.    Dunbar told Southern Lock that a check would be sent to Southern Lock for the order but Southern Lock never received payment for the locks.  In early March 2014, Southern Lock attempted to contact Dunbar for the first time to request payment.  In April 2014, Southern Lock received an e-mail from Quad indicating that a check would be sent to Southern Lock. This was the last communication Southern Lock received from Quad. Southern Lock attempted to contact Quad many times to request payment, without success.

       d.    As part of the investigation, A.L. provided DOI-OIG with documents reflecting that when Quad communicated with Southern Lock via e-mail, Quad used the e-mail accounts johnmatthews192@yahoo.com and quadtradeservices@yahoo.com.

## 2.   Victim-Vendor Warehouse Lighting

21.   In 2013,  victim-vendor J.A. contacted DOI-Bureau of Indian Affairs to complain that J.A.'s company (Warehouse Lighting) had been the victim of fraud perpetrated by KLA.  After interviewing the victim, law enforcement officers from DOI-OIG learned that, in October 2012, KLA contacted Warehouse Lighting and inquired about Warehouse Lighting supplying light bulbs for a government agency.  As is their normal course of business, Warehouse Lighting required credit references from KLA.  KLA supplied credit references from Quad, TCI, and Robar Industries.  Because KLA's credit references were good, Warehouse Lighting employees fulfilled the order by sending light bulbs to DOI-Bureau of Indian Affairs in or about 2012.  Under the terms of the agreement between KLA and Warehouse Lighting, KLA was to pay Warehouse Lighting after Warehouse Lighting delivered the product to the Government.  KLA, however, never paid Warehouse Lighting.  Around February 2013, a representative of the victim-vendor contacted KLA's credit references, which were Quad, TCI, and Robar Industries. Each phone number led to the same voice mail system.  A representative of the victim-vendor was able to speak to somebody several times at KLA, but the person would eventually hang up on the representative.

22.   Records provided by the victim-vendor after the interview reflected that Warehouse Lighting sent an e-mail to klainternational@yahoo.com indicating that both the accounting department and the president of Warehouse Lighting had attempted to reach out for payment with no response from KLA.  At the

request of law enforcement, the victim-vendor provided copies of Warehouse Lighting invoices to KLA revealing that KLA owed Warehouse Lighting $10,490.18 out of an order for $15,490.18

23.    A social security number that was listed for "Allen Smith" on the KLA credit application was determined to be fictitious.

24.    At the request of law enforcement, the victim-vendor provided documents reflecting that when KLA communicated with Warehouse Lighting, it used the email address of klainternational@yahoo.com and startrek33@rocketmail.com.

### 3.  <u>Victim-Vendor American Hotel Register Company</u>

25.    In October 2014, DOI-OIG interviewed a representative of victim-vendor American Hotel Register Company.  During this interview, law enforcement officers learned, in part, that American Hotel Register Company provided supplies to a school on behalf of Quad.  In short, Quad arranged for American Hotel Register Company to provide products to the school.  In support of the credit application Quad provided in support of the order, Quad provided the social security number of a person who was deceased.

26.    As partial payment for the products that American Hotel Register Company provided to the school, Quad provided a check to the victim-vendor that was later determined to have been an altered or fictitious check.  Quad next sent the victim vendor a $5,000 cashier's check that was later determined to be fictitious.

27.    Overall, the victim-vendor American Hotel Register Company suffered approximately $30,000 in loss from doing business with Quad even though the victim-vendor had learned that the school had paid Quad for the products provided by the victim-vendor under the subcontract. Representatives of the victim-vendor provided law enforcement with documents reflecting that when Quad communicated with the victim-vendor via e-mail, it used the e-mail address quadtradeservices@yahoo.com.

### 4.  <u>Victim-Vendor Kully Supply</u>

28.    DOI-OIG interviewed S.B., a representative of victim-vendor Kully Supply. law enforcement officers learned, in part, that in September 2012, Kully Supply received a request for a quote from William James of KLA.

29.    James sent Kully Supply an email requesting a quote for various supplies. James also requested "net 30 terms", which meant KLA would have 30 days after shipment to pay for the supplies.

30.    As part of the investigation Kully Supply provided DOI-OIG with a copy of a KLA purchase order for the supplies, which listed a total price of $5,955.86. Kully Supply provided DOI-OIG with a Kully Supply sales invoice in the amount of $5,955.86. Kully Supply also provided a document dated November 29, 2012, from Kully Supply's internal accounting system, which reflected that $5,955.86 was written off as "bad debt."

31.    As part of the investigation, Kully Supply provided DOI-OIG with documents reflecting that when KLA communicated with Kully Supply via e-mail, KLA used the e-mail accounts wjames_ds@yahoo.com.

### 5.  <u>Victim-Vendor Buckstaff Public Safety / Handcuff Warehouse</u>

32.    Law enforcement officers from the U.S. Department of Justice OIG and DOI-OIG interviewed representatives of victim-vendor Handcuff Warehouse. During the interviews, law enforcement officers learned, in part, that around July 2014 Quad called Handcuff Warehouse for a quote and sent a purchase order, which appeared to show that Quad was related to the Government (in this case, the Army).

33.  Handcuff Warehouse shipped the supplies, on behalf of Quad, to an address in Cinnaminson, NJ. Quad failed to pay for the order despite numerous calls and e-mails from Handcuff Warehouse.

34.    Later, in December 2014, Handcuff Warehouse received a quote request from TCI for handcuffs. A representative of Handcuff Warehouse said they later noticed that a Commercial and Government Entity (CAGE) code was the same on TCI paperwork and Quad paperwork.

35.    Representatives of the victim-vendor provided law enforcement with documents. The documents revealed that when Quad communicated with the victim-vendor via e-mail, it used the e-mail address chris.scott1215@yahoo.com and signed the e-mail messages as SSG Chris Scott, Direct Line 1-856-236-7126, US Army, 141-I Rte 130 S, Unit 233, Cinnaminson, NJ 08077.

36.    Documents provided by the victim-vendor revealed that when TCI submitted a credit application to Handcuff Warehouse, it listed the TCI business address as 8605 Santa Monica Blvd, Suite 90768, Los Angeles, CA

90069, which is a mailing address listed in Fisher's subpoenaed Earth Class Mail account records, and the business address of Security Tactical.

37.   Documents provided by the victim-vendor also revealed that when TCI communicated with the victim-vendor via e-mail, it used the e-mail address timjohnson29@yahoo.com.

### 6. Victim-Vendor Netlocity VA, Inc.

38.   In April 2015, DOI-OIG interviewed J.R., a representative of victim-vendor Netlocity VA, Inc ("Netlocity"). During the interview, law enforcement officers learned, in part, that around September 2014, Netlocity received a call from William James, an Army employee, seeking supplies.

39.   After receiving a purchase order from James, J.R. sent an email to James to verify that James was with the Army.  J.R. said James responded that an Army Sergeant would follow up with J.R.  Shortly thereafter, J.R. received a call from someone who represented himself as a Sergeant with the Army. J.R. said he arranged for the shipment of James' order on credit.  J.R. said he sent two follow-up email messages to James requesting payment in October 2014, but never received a response. J.R. did not believe Netlocity received payment for the order.

40.   At the request of law enforcement, J.R. provided a copy of a purchase order that he had received from James. The ship to address listed on the purchase order was, US Army, 141-I Rte 130 S, Unit 233, Cinnaminson, NJ 08077, which is also Quad's business address and the address of a UPS store.

41.   At the request of law enforcement, the victim-vendor also provided documents reflecting that when James communicated with Netlocity via e-mail, he used the e-mail address williamjames239@yahoo.com.

### 7. Victim-Vendor Chief Supply

42.   In 2014, DOI-OIG interviewed representatives of victim-vendor Chief Supply.  During the interviews, law enforcement officers learned, in part, that in 2012, Chief Supply received an order for approximately $40,000 to provide supplies to the Government (in this case, the Department of State) on behalf of TCI.

43.   During the interviews, law enforcement officers learned, in part, that Chief Supply requested that TCI provide a check for payment before the release of the supplies. When Chief Supply received and attempted to deposit the

check, however, the check from TCI did not clear due to insufficient funds. When J.C., a Chief Supply representative, attempted to contact Bank of America using a phone number listed on the check from TCI, J.C. said she reached a man who said she had the wrong number. Chief Supply then cancelled the order before it could be shipped.

44.     At the request of law enforcement, the victim-vendor provided a copy of a check received from TCI. The check appeared to list a name of TCI Clothing and Uniforms. The check appeared to list an address of 1640 Nixon Drive, Suite 121, Moorestown, NJ, which is TCI's business address and the address of a UPS store.

45.     C.B., another Chief Supply representative, recounted how she later received a call in February 2014 from TCI requesting supplies related to a Government contract (in this case, the Army).

46.     At the request of law enforcement, C.B. provided documents reflecting that, when TCI sent email messages to her, the signature block of the email listed Thomas Carter-MSG, TCI/US Army.

47.     C.B said that, after receiving a credit application from TCI and submitting the application to the Chief Supply accounting department, she was told Chief Supply would be unable to do business with TCI.  C.B said she informed a TCI representative of this during a phone conversation.

48.     At the request of law enforcement, C.B. provided documents reflecting that when TCI communicated with her via e-mail, it used the e-mail address tcitechnologies@yahoo.com.

### 8. Victim-Vendor Guardian Safety and Supply, d.b.a. Enviro Safety Products

49.     In April 2015, DOI-OIG interviewed R.M., a representative of Guardian Safety and Supply d.b.a., Enviro Safety Prodcts ("Guardian").  During the interview, law enforcement officers learned, in part, that Guardian received a credit application from William James of KLA.  Guardian required cash up front for the first KLA order.  Guardian received a check for a partial payment from KLA and, as a result, released the order.

50.     KLA then requested additional items. Guardian again received a check from KLA, and released the second order. Subsequently, KLA submitted a third order; however, this time KLA requested that Guardian ship the order without

first receiving a check.  Guardian agreed to KLA's request and shipped the third order.

51.    Shortly thereafter, Guardian received notification from the bank that the first KLA check did not clear. R.M. said he contacted Marty Rogers, the bank representative listed on the KLA credit application.  The call went to voicemail, R.M. said, and the voicemail greeting included a Bank of America tone built into the response so that it sounded like a legitimate bank. R.M. said he left a message requesting information concerning the KLA check that did not clear.

52.    R.M. said Rogers called back and advised that KLA's account contained assets in excess of $50,000 and that there should not be any problem.

53.    R.M. said Guardian also received notification that the second KLA check did not clear, and that nobody he spoke with at Bank of America was able to verify Rogers' employment with the company.

54.    R.M. said that, during that many times he tried to reach KLA to request payment, he always reached a telephone tree and he was never able to speak with anyone. In the end, Guardian wrote off the full amount of $48,208 that KLA owed.

### 9. <u>Victim-Vendor National School Safety Center</u>

55.    In 2015, DOI-OIG interviewed representatives of victim-vendor National School Safety Center ("NSCC").  During the interviews, law enforcement officers learned, in part, that in 2010, Keith Fisher contacted NSCC after being awarded a contract to provide bullying prevention books to the Government (in this case, the Federal Law Enforcement Training Center).

56.    NSCC prepared around 200 of the bullying books for KLA.  The order total billed to KLA had been $3,523.

57.    NSCC shipped the order on behalf of KLA, without requiring any upfront payment, based on the fact that Fisher had provided documentation reflecting that KLA had received a Government contract for the books.

58.    NSCC left KLA numerous voice messages requesting payment, and also sent invoices to KLA on a monthly basis for over a year without receiving any payment.

## 10. **Other Victim-Vendors**

59.    In addition to the victims identified above (Southern Lock and Supply Co., Warehouse Lighting, the American Hotel Register Company, Kully Supply, Handcuff Warehouse, Netlocity, Chief Supply, Guardian, and the NSCC), law enforcement officers have identified other victim-vendors who were defrauded or not paid by KLA, Quad, or TCI, including: PK Safety Supply, McGraw Hill Education, Anthem Sports, Baseline Equipment Company, The Bulk Bookstore, Bulbs.com, Bob Barker Company, Dade Paper, Atlantic Tactical, Powell Electronics, Armin Innovative Products, Inc., OSI Batteries, G&S Safety Products, Intermountain Lock and Supply, Construction Safety Products, Bass Pro, and others.

60.    During interviews or conversations with representatives of these victim-vendors, or when reviewing e-mail messages sent from representatives of these victim-vendors, law enforcement officers learned that the victim-vendors have not been paid by KLA, Quad, or TCI, or have been defrauded by KLA, Quad, or TCI in a similar manner to that described above.

61. Currently, the investigation has revealed that KLA, Quad, TCI, and Atlantic have collectively received at least $800,000 worth of Federal contracts and losses claimed by victim-vendors exceed $900,000.

62.  The investigation has further revealed that Fisher has used a number of agencies and sub-divisions of the Government as conduits to perpetrate his fraud on the victim-vendors. Specifically, the following agencies have issued contracts to Fisher or one of the entities he controls:  Department of State; Immigration and Customs Enforcement; Alcohol Tobacco, Firearms and Explosives; Customs and Border Protection; Federal Bureau of Investigation; Department of the Army; Geological Survey; Department of Veterans Affairs; Bureau of Indian Affairs; Department of the Interior; National Park Service; Department of the Navy; Federal Prison System or Bureau of Prisons; Bureau of Reclamation; Food Safety Inspection Service; Department of Agriculture; Department of Justice; Federal Law Enforcement Training Center; Department of Homeland Security; and Transportation Security Administration.

## B.    **Analysis of Fisher's Earth Class Mail Records**

63. In the course of the investigation, I have reviewed subpoenaed records for Fisher's Earth Class Mail accounts (#90768 and #24707).

64. The records for one of Fisher's Earth Class Mail accounts (#90768) revealed that Keith Fisher, 926 Haddonfield Road, Suite 312, Cherry Hill, NJ 08002, phone number 267-401-9705, applied for delivery of mail to multiple addresses through agent on January 3, 2014. The name of firm or corporation listed on the applications was KLA International, 926 Haddonfield Road, Suite 312, Cherry Hill, NJ 08002.

     a.     One address to be used for delivery was 8605 Santa Monica Blvd, #90768, Los Angeles, CA 90069-4109.

     b.     A second address to be used for delivery was 538 W 21st St, #90768, Houston, TX 77008-3642.

65.    The records for the same Earth Class Mail account (#90768) revealed that Keith Fisher, 926 Haddonfield Road, Suite 312, Cherry Hill, NJ 08002, phone number 267-401-9705, applied for delivery of mail to an address through agent on March 5, 2014. The name of firm or corporation listed on the application was KLA International, 926 Haddonfield Road, Suite 312, Cherry Hill, NJ 08002.

     a.     The address to be used for delivery was 427 N. Tatnall Street, 90768, Wilmington, DE 19801-2230.

66.    The records for this Earth Class Mail account (#90768) included a copy of a New Jersey auto driver's license for Keith B. Fisher, Sr., 926 Haddonfield Road, Suite 312, Cherry Hill, NJ 08002-2775. The records for this Earth Class Mail account (#90768) also included a copy of a U.S. passport for Keith Fisher, Sr.

67.    The records for this Earth Class Mail account (#90768) included customer contact information of KLA International, Keith Fisher, keith.fisher33@yahoo.com, 267-401-9705.

## C.    DOI-OIG Review of E-mail Records

68.    The investigation revealed that Fisher and/or his associates, using aliases, sent e-mail messages to victim-vendors. These e-mails were seized during a search of e-mail accounts in late 2014.

69. In one example, an e-mail was sent from quadtradeservices@yahoo.com to asherwin@southernlock.com on January 6, 2014.  In the e-mail, the Quad

representative stated, "[a]ttached is the Credit Application for your review" and "Our vendors give references by fax only".

70. Attached to the e-mail was a completed Southern Lock and Supply Co. credit application for "QUAD TRADE SERVICES, 141-I Rte 130 South, Suite 233, Cinnaminson, NJ 08077." The three trade references and facsimile numbers listed on the application were TCI TECHNOLOGY, 1-856-528-4523; KCA INT INC, 1-856-282-1334; and ROBAR IND., 1-609-642-2629.

71. The e-mail signature block included the following:

> i. Roger Dunbar – Contract Specialist Direct
> Line -  1-856-236-7126
> Quad Trade Services
> 141-I Route 130 South Unit 233
> Cinnaminson, New Jersey 08077

72. Based on my training and experience, my involvement in this investigation, and my review of these records, I concluded that Fisher or one of his associates representing Quad (a company based in New Jersey) transmitted an e-mail communication to Southern Lock (a company based in Florida) through Yahoo! (a company based in California), for the purpose of obtaining property by means of false representations.

73. Additionally, the investigation revealed e-mail messages that were sent from a Ring Central e-mail account to e-mail addresses associated with Fisher's businesses. For example, on January 8, 2014, tcitechnologies@yahoo.com received an e-mail from a Ring Central e-mail address. The subject of the e-mail was "New Fax Message from (727) 544-8278". Attached to the e-mail was a document titled, Southern Lock & Supply Co. The document included the following:

> To:  TCI Technology
> Attn: Credit Dept.
> Fax:  856-528-4523
>
> Re:  Quad Trade Services

74. The document stated that "your company has been referred to us as a credit reference for the above mentioned business."

16

75. This is simply a sample of the e-mails that I have reviewed. Again, these e-mails were seized during a search of e-mail accounts.

76. In connection with this matter, I have prepared a number of applications made to the Court with respect to e-mail communication.  Specifically, an or about December 5, 2014, I prepared an Affidavit in support of a warrant to search the e-mail accounts of klainternational@yahoo.com, quadtraderservices@yahoo.com, startrek33@rocketmail.com, and johnmatthews192@yahoo.com.  The e-mail accounts were associated with KLA and Quad.  Those search warrants were signed by United States Magistrate Judge Karen M. Williams on December 5, 2014.  See United States District Court for the District of New Jersey Mag. No. 14-5589 (KMW), Mag. No. 14-5588 (KMW). Mag. No. 14-5587 (KMW) and Mag. No. 14-5586 (KMW).

### D.    DOI-OIG's Search of 6042 N. Water Street, Philadelphia, PA 19120

77.  In the course of this investigation, I reviewed subpoenaed records on Fisher's Comcast internet account.  The records included subscriber information of Keith Fisher, 6042 N. Water Street, Philadelphia, PA 19120, 267-401-9705.  The service type listed was high speed internet service.  The e-mail user ID listed was Fishman1215@comcast.net.

78.  In the course of this investigation, law enforcement officers collected trash left abandoned in front of the subject location. A review of the trash revealed shreds of documents. The shreds contained business name, address, and phone number information.

    a.    A few pieces of shredded paper, when assembled, listed:

        Southern Lock & Supply Co.
        PO Box 1980
        Pinellas Park, FL
        Also listed was a phone number, 727-541-5536.

    b.    Other pieces of shredded paper, when assembled, listed:

        Bill To:
        QUAD TRADE SERVI
        141 I RTE 130 SOUTH
        SUITE 233
        CINNAMINSON, NJ

888-240-3598

    c.     Other pieces of shredded paper, when assembled, listed:

RTE 130 SOUTH
SUITE 233
CINNAMINSON, NJ 08077
ed By:  Mr. Roger Dunbar

79.  On July 31, 2015, the United States District Court for the Eastern District of Pennsylvania issued a search warrant authorizing the search of 6042 N. Water Street, Philadelphia, PA 19120.  See Mag. No. 15-865 (RAL).  The search warrant was executed on August 4, 2015.  During the search, law enforcement officers seized boxes of blankets.  At least one of the boxes had a shipping label indicating it had been sent from American Hotel Register to Quad Trade Services, Cinnaminson, NJ.

80.  During the search, law enforcement officers seized a paper display that included information related to KLA, Quad, TCI, and Security Tactical, Pacific Safety Solutions, and West Coast Tactical. The same display listed the e-mail addresses Fran.Todd11@yahoo.com, Chris.Scott1215@yahoo.com, and allen.sowden55@yahoo.com.  The display also included a post-it note with a hand-written word "ENVIROSAFETY".

81.  During the search, law enforcement officers seized files that included files marked as "Quad – 2014", "Atl Saf – 2015", "KLA CONTRACTS – 2013", "KLA CONTRACTS – 2012", and "KLA CONTRACTS – 2011."

**E.    Interview of Keith Fisher**

82.  On August 4, 2015, agents from DOI-OIG and the Naval Criminal Investigation Service, after identifying themselves as law enforcement officers, conducted a voluntary, recorded interview of Fisher at 6042 N. Water Street, Philadelphia, PA 19120. Fisher agreed to the voluntary interview and agreed to have the voluntary interview recorded.

83.  Unless otherwise indicated, all oral statements referred to herein are set forth in substance and in part, rather than verbatim.  Fisher confirmed that he was the President and Owner of KLA International. Fisher also confirmed that he was associated with Quad, TCI, and Atlantic. He confirmed that KLA and Quad received contracts through FedBid.  Fisher indicated that Allen Sowden was involved in at least one of the businesses, and that Sowden assisted with

18

obtaining veterans preference contracts.  Fisher indicated that his daughter, Kiona Fisher, had been involved in at least one of the businesses for the purpose of obtaining woman minority preference contracts.

84.  Fisher confirmed that his businesses sometimes opened lines of credit with suppliers.  Fisher explained that some suppliers requested a credit application and references.  Fisher confirmed that, in at least some instances, he completed credit applications and faxed them to the suppliers.  Fisher indicated that he had faxed a credit application from a UPS store, but that he mainly faxed credit applications from 6042 N. Water Street, Philadelphia, PA 19120.  Fisher explained that he had a service, Ring Central, which allowed him to fax from a computer.

85.  Fisher confirmed that he remembered Southern Lock.

### F.    Interview of Kareem Fisher, a Son of Keith Fisher

86.  On August 4, 2015, U.S. Postal Inspection Service Inspectors interviewed Kareem Fisher about his father's businesses, particularly KLA.  Prior to the interview, Fisher was advised that the interview was voluntary.  Unless otherwise indicated, all oral statements referred to herein are set forth in substance and in part, rather than verbatim.

87.  Kareem Fisher related that he began helping his father with KLA around 2012 or 2013.  Kareem Fisher estimated that since he had started helping his father he had made approximately $10,000.

88.  Kareem Fisher acknowledged that he used the name John Matthews when conducting business for KLA, and that his father told him to do so.

89.  Kareem Fisher stated that his father said it was normal for people in sales to use an alias when dealing with customers, and that the alias account was set up at the direction of his father sometime in 2012 or 2013 to conduct KLA business.

90.  Kareem Fisher advised that his father told him to create a work e-mail, johnmatthews192@yahoo.com.

91.  After being shown a credit application for an Outdoor World Incentives (Bass Pro Shops) account, Kareem Fisher initially denied, but later admitted that he filled out and signed the application as John Matthews.

19

## G.      DOI-OIG's Review of Fisher's Bank Records

92.    The investigation's review of subpoenaed bank records revealed that, in part, that Fisher had an account with Freedom Credit Union.

93.     Included in the bank records was a Freedom Credit Union online application form, which listed Keith Fisher as the primary applicant and a residence address of 6042 North Water Street, Philadelphia, PA 19120. Fisher's employer was listed as KLA.  Fisher's work phone and e-mail address were listed as 800-762-4122 and startrek33@rocketmail.com.

94.    The investigation's review of subpoenaed bank records revealed that, in part, Fisher used a copy of a contract between the Government (in this case, the U.S. Department of State) and KLA to help obtain a loan from the American Heritage Federal Credit Union. Included in the subpoenaed bank records were the following documents:

        a.      A new business account interview form, dated June 11, 2010, for KLA.

        b.      A $13,237.56 U.S. Department of State purchase order dated June 25, 2010, to Keith Fisher, KLA.

        c.      A document that appeared to be a U.S. Department of Treasury, Internal Revenue Service Form 1120, U.S. Corporation Income Tax Return, for calendar year 2009 or tax year beginning March 2009, ending March 2010, for KLA International, Inc., 926 Haddonfield Road, Suite 312, Cherry Hill, New Jersey 08002-2775.  The document listed the date incorporated as December 8, 2000, the total assets as $275,000, and the gross receipts or sales as $1,500,000.

        d.      An application summary included the following information:

                Primary Borrower:  KLA International Inc
                Additional Borrower:  Allen Sowden
                Additional Borrower:  Keith Fisher
                Amount Financed:  $35,000

20

e.      A notice, dated July 6, 2011, to KLA, provided information concerning a civil action, American Heritage Federal Credit Union v. KLA, 926 Haddonfield Road, Suite 312, Cherry Hill, NJ 08002-2775. The notice indicated that it had been sent in an attempt to collect a debt.

f.      A praecipe for judgment for failure to answer and assessment of damages, filed and attested on July 25, 2011, listed the plaintiff as American Heritage Federal Credit Union and the defendant as KLA International, Inc., 926 Haddonfield Road, Suite 312, Cherry Hill, NJ 08002-2775. The form referenced a failure to file an answer to the plaintiff's complaint within 20 days from service, and to assess the plaintiff's damages of $35,000.

## V.      SEALING ORDER REQUESTED

95.      This investigation is ongoing.  Premature disclosure of this application and Affidavit for a Criminal Complaint and arrest warrant may compromise the investigation by, among other things, disclosing the precise matters being reviewed and the status of the investigation to date.  Accordingly, it is respectfully requested that this Criminal Complaint and supporting affidavit and arrest warrant be sealed until further Order of the Court.

## VI.      CONCLUSION

96.      In light of these facts, I respectfully submit that there is probable cause to believe that Keith Fisher conspired to commit wire fraud contrary to Title 18 United States Code, Section 1343, in violation of Title 18, United States Code, Section 1349.

97.      Accordingly, I respectfully request that the Court issue:  (a) a Criminal Complaint and arrest warrant; and (b) order sealing the Criminal Complaint and arrest warrant, and all documents related thereto until further Order of this Court.